IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| RICARDO JAMAL STROZIER, | |
| Plaintiff, | CIVIL ACTION NO.: 5:22-cv-42 |
| v. | |
| ROBERT TOOLE, et al., | |
| Defendants. | |

### REPORT AND RECOMMENDATION

Defendants filed two Motions to Dismiss.  Docs. 45, 56.  Plaintiff filed Responses, opposing Defendants' Motions.[1]  Docs. 52, 59.  For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

### BACKGROUND

On August 8, 2022, Plaintiff filed this Complaint, asserting Eighth Amendment and First Amendment claims under 42 U.S.C. § 1983.  After frivolity review, the following claims remain pending: Eighth Amendment excessive force claims against Defendants Wicker, Taylor,[2] and Dodson; First Amendment retaliation claims against Defendants Wicker, Taylor, Toole, Odom,

---

[1]  In his Response to Defendant Tillman's Motion to Dismiss, Plaintiff states he adopts all facts and arguments in his Response to the other Defendants' Motion to Dismiss.  Doc. 59 at 1.  Plaintiff does not make any independent arguments in response to Defendant Tillman's Motion.

[2]  Plaintiff has since clarified he did not assert any excessive force claim against Defendant Taylor. Doc. 52 at 5.

Johnson, and Dodson; and First Amendment access to courts claims against Defendants Tillman and Reynolds.  Doc. 19.  Although Plaintiff's Complaint was received by the Court on August 8, 2022, Plaintiff signed the Complaint on June 21, 2022.  Id. at 34.

Plaintiff asserts various claims based on conduct that occurred while he was incarcerated at three different facilities.  Plaintiff alleges the events giving rise to his claims took place at Ware State Prison ("WSP") between February 15, 2019 to August 3, 2019, at Georgia State Prison between June 11, 2020 to December 10, 2020, and in the Special Management Unit between December 11, 2020 to the present.  Doc. 1-1 at 20.

Plaintiff alleges officials at WSP retaliated against him for a case he had previously filed against prison officials of Telfair State Prison.  Doc. 1-1 at 20.  Plaintiff asserts Defendants Johnson, Wicker, and Odom ordered members of the WSP security team to harass him by searching his property.  Id. at 21.  Plaintiff alleges he and his property were regularly searched by Defendant Taylor and other unnamed officers.  Id. at 22.

Plaintiff states he was transferred to Georgia State Prison ("GSP") sometime in 2020 and alleges Defendant Wicker again threatened him as retaliation after the transfer.[3]  Id. at 24.

Plaintiff alleges he was transferred to the Special Management Unit ("SMU") on December 10, 2020, where Defendant Dodson retaliated against him by making inappropriate sexual comments and assaulting Plaintiff with pepper spray.  Id. at 25–26.  Plaintiff also alleges Defendant Wicker and an unknown officer fired on him with firearms, resulting in a mandibular fracture and a gunshot wound to the leg.  Id. at 23.  Lastly, Plaintiff alleges while he was housed

---

[3]   Plaintiff's allegations suggest Wicker may have moved from WSP to GSP and, possibly, later transferred from GSP to the SMU.

2

at the SMU, Defendants Tillman and Reynolds prevented him from accessing grievance forms and destroyed grievances he submitted.  Id. at 25–26.

On June 20, 2023, Defendants Dodson, Hargrove, Johnson, Odom, Reynolds, Taylor, Toole, and Wicker filed their Motion to Dismiss, arguing Plaintiff failed to exhaust all administrative remedies.  Doc. 45.  Plaintiff filed a motion to amend and the Court allowed Plaintiff to amend his Complaint substituting Defendant Tillman for Defendant Hargrove.  Docs. 50, 51.  Plaintiff filed a Response to Defendants' Motion to Dismiss, arguing he exhausted all available administrative remedies and stating some administrative remedies were unavailable.  Doc. 52.  Plaintiff responds he filed multiple grievances about the issues, several were improperly rejected, and he never received a response for multiple grievances, believing they were destroyed by Defendants.  Doc. 52.

Defendant Tillman filed a Motion to Dismiss on August 31, 2023, making the same argument that Plaintiff failed to exhaust administrative remedies.  Doc. 56.  Plaintiff responded, incorporating the same arguments from his previous Response.  Doc. 59.

## DISCUSSION

I.  **Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a

federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of

4

administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

To properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

**II.     Standard of Review for Exhaustion**

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for suing, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under

5

the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'"  Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")).  "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."  Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  Ross, 578 U.S. at 642.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones").  Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it."  Ross, 578 U.S. at 642.  Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust.  Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The

6

PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative

7

remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III. Applying Turner

#### A. The Georgia Department of Corrections' ("GDC") Administrative Remedies

Ware State Prison, Georgia State Prison, and the Special Management Unit, where these claims arose, utilize the GDC procedures for prisoner grievances. Doc. 45-2 at 1–2. The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") 227.02. Id. Under SOP 227.02, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" that "personally affects the offender" and that is not explicitly listed in the SOP as a "non-grievable issue." Doc. 45-3 at 4.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Doc. 45-3 at 8. Under SOP 227.02, absent "good cause," original grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance. Id. The complaint must be a single issue or incident. Id. Then, if an inmate is dissatisfied with the response or if the time allowed for the Warden's decision has expired, he may appeal the decision to the GDC Central Office. Id. at 14. An appeal must be filed within seven days of an inmate receiving the Warden's response. Id. The GDC Commissioner then has 120 days after receiving the appeal to deliver a decision to the inmate. Id. at 15. Only then is the grievance procedure complete. Id.

8

B.   **Plaintiff Did Not Exhaust Available Administrative Remedies**

1.   *Plaintiff's claims fail under Turner step one.*

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82.

Defendants argue Plaintiff did submit some grievances, but he did not comply with the procedural rules and deadlines set forth in the state grievance system and, therefore, Plaintiff failed to fully exhaust his administrative remedies. Doc. 45-1 at 10. Defendants state Plaintiff filed five grievances between February 15, 2019 and December 22, 2020. Id. at 7. Four of the five grievances are related to Plaintiff's Eighth Amendment excessive force claim and First Amendment retaliation claim.[4]

On February 15, 2019, Plaintiff filed Grievance 313948 alleging various WSP officials, including Edwina Johnson, were retaliating against him for bringing a lawsuit against prison officials. Id. at 8. This grievance was rejected on September 16, 2020, as filed out of time. Id. Plaintiff appealed the rejection on November 23, 2020. On December 10, 2020, the Central Office also determined the grievance was not filed in a timely manner. Id.

On November 9, 2020, Plaintiff filed Grievance 316618 alleging multiple issues. In this grievance, Plaintiff alleged he was shot on August 1, 2020, while at WSP and GSP officials had imposed undue heightened security restrictions and disciplinary sanctions on him. Id. at 9. This grievance was rejected on November 17, 2020, because it contained more than one issue, was filed out of time, and contained a non-grievable issue. Id. Plaintiff appealed the rejection on

---

[4]   On August 3, 2019, Plaintiff filed Grievance 294884, alleging he received inadequate medical treatment after he believed he was having a heart attack or stroke. Doc. 45-1 at 8–9. This grievance is not related to the allegations in Plaintiff's Complaint and is not addressed further.

9

December 16, 2020.  On December 17, 2020, the Central Office determined it would not address the grievance because Plaintiff violated the grievance SOP by including multiple issues in the grievance.  Id.

On December 7, 2020, Plaintiff filed Grievance 317999 alleging multiple issues.  Plaintiff alleged he was being harassed out of retaliation while at GSP, his requests for legal materials had gone unanswered, he was not being provided with grievances, and he was not receiving needed medical care.  Id.  This grievance was rejected on December 17, 2020, because it contained more than one issue.  Id.  Plaintiff appealed the rejection on February 20, 2021.  On February 25, 2021, the Central Office determined it would not address the grievance because it contained more than one issue.  Id. at 10.

On December 22, 2020, Plaintiff filed Grievance 321787 alleging multiple issues.  Plaintiff alleged he had been subjected to an extensive campaign of harassment and that he suffered a gunshot wound to the face and leg on August 1, 2020.  Id. at 10.  This grievance was rejected on March 18, 2021, because it was filed out of time and contained more than one issue, violating the SOP.  Id.  Plaintiff did not appeal this decision.

Plaintiff filed five grievances between February 2019 and December 2020.  Of the five filed grievances, only four are related to the allegations in Plaintiff's Complaint.  All four related grievances were rejected for violating the grievance SOP because they were either not filed in a timely manner or contained more than one issue.  Plaintiff also never appealed Grievance 321787.

For the four related grievances, Plaintiff argues he exhausted all available administrative remedies and complied with the procedural rules and deadlines as set forth in the statewide grievance procedure.  Doc. 52 at 6.  Plaintiff argues all four of these grievances were rejected

because Defendants failed to follow the necessary procedures allowing untimely grievances for good cause and emergency grievances as outlined in the SOP.  Id. at 9.  Plaintiff states he took each available step in the administrative process until Defendants no longer made the administrative remedies available to him.  Id. at 6.

Plaintiff also alleges he filed multiple grievances after he was transferred to the SMU.  Doc. 1-1 at 25.  Plaintiff asserts the grievances were given to the unit manager, Defendant Tillman.  Id.  Plaintiff alleges Defendant Tillman would either not respond to or destroyed these grievances.  Id.  Plaintiff alleges he filed grievances related to the incidents involving Defendants Reynolds and Dodson and they were never answered.  Id. at 26.  Plaintiff argues administrative remedies were unavailable at the SMU because he has submitted several grievances that were not responded to and Defendant Tillman has been destroying his grievances,.  Doc. 52 at 10–11.

Even taking Plaintiff's allegations as true, Plaintiff's claims fail under Turner step one.  The four relevant grievances were attempts to grieve incidents underlying Plaintiff's claims in this case, but they were all rejected on procedural grounds—for being untimely, containing multiple issues, or both.  Plaintiff argues Defendants incorrectly rejected these grievances and they should have been accepted for good cause or as an emergency grievance.  But Plaintiff does not dispute three of the four relevant grievances were untimely and the fourth improperly raised multiple issues.  According to the SOP, for untimely grievances, "the Grievance Coordinator may waive the time limit for [g]ood [c]ause."  Doc. 45-3 at 9.  The grievance coordinator is not required to waive the time limit for good cause.  Therefore, the grievance coordinator properly rejected the untimely grievances under the SOP.  For an emergency grievance, the grievance must be submitted by the offender as an emergency grievance and determined by the duty officer to be an emergency grievance.  Id. at 7.  Plaintiff has not alleged he submitted any of the three

11

late grievances as emergency grievances. Plaintiff also does not dispute the fourth grievance improperly raised multiple issues. Therefore, all four of these grievances were properly rejected as procedurally deficient under the SOP.[5]

Plaintiff attempts to argue administrative arguments were unavailable, but all of those arguments fail. Plaintiff states prison officials rejected all his grievances for the purposes of denying him administrative remedies, not for the reasons stated in the denials. Doc. 52 at 8. Plaintiff essentially argues administrative remedies were unavailable because prison officials used pretextual reasons to deny his grievances. Plaintiff offers no support for this claim, and it is contradicted by the record. As discussed above, the four relevant grievances were rejected because Plaintiff did not properly follow the procedures and deadlines detailed in the SOP. Doc. 45-1 at 10. All reasons cited for rejecting the grievances are specifically identified in the SOP as valid reasons for rejecting grievances. Doc. 45-3 at 9. The grievances were rejected because they were either untimely filed or contained more than one issue, violating the procedural rules outlined in the SOP. Proper exhaustion requires compliance with all deadlines and procedural rules. Plaintiff's grievances were legitimately denied for all of the procedural failures Defendants identified. Plaintiff has not alleged any facts to dispute these grievances were properly denied. Therefore, administrative remedies were available to Plaintiff.[6]

Plaintiff also suggests administrative remedies were unavailable because he never received responses to some of his grievances. Doc. 52 at 6, 10–11. However, the SOP is clear, once the time allowed for the Warden's decision to be given to the inmate has expired, the

---

[5]   In addition to being untimely, Plaintiff never appealed the denial of Grievance 321787. Thus, this would be an additional reason to dismiss any claims identified in Grievance 321787.

[6]   Even if Plaintiff's allegations on this point were sufficient to show administrative remedies were unavailable under Turner step one, Plaintiff's argument would fail at step two. Plaintiff offers no factual support or evidence to support his allegations, and the record directly contradicts his allegations.

inmate may file a Central Office Appeal. Doc. 45-3 at 14. Even if Plaintiff's grievances were not responded to at the institutional level, the SOP provides a process to appeal non-responses. A lack of response by the institution does not mean the process is unavailable. Plaintiff did not exhaust his administrative remedies.

Plaintiff briefly states prison officials did not give him grievance appeal forms. Doc. 52 at 6. Even if this were true, it would not be sufficient to demonstrate administrative remedies were unavailable so as to excuse Plaintiff's failure to exhaust. As noted above, Plaintiff failed to appeal one of the four relevant grievances, Grievance 321787. But in addition to Plaintiff's failure to appeal the denial of Grievance 321787, that grievance was procedurally deficient because it was untimely and contained more than one issue. Thus, Plaintiff's access to a grievance appeal form for Grievance 321787 is immaterial. Moreover, the SOP provides other methods by which prisoners can submit appeal forms, such as via a kiosk or tablet. See Doc. 45-3 at 14. Plaintiff states he was housed in the SMU at the time he filed Grievance 321787 but does not allege he did not have access to the appeal process through these other methods. By not fully appealing his grievance, Plaintiff has failed to exhaust his administrative remedies.

Plaintiff also contends he submitted "many more grievances that aren't reflected in the grievance history" Defendants submitted with their Motion to Dismiss. Doc. 52 at 10. Plaintiff states grievance receipts attached to his Response to Defendants' Motion to Dismiss prove he submitted more grievances than are reflected in his grievance history.[7] Id. (referring to two grievance receipts, one dated September 1, 2022 and another dated December 20, 2022, located at Doc. 52 at 27, 28). Plaintiff contends these receipts show "administrative remedies [have]

---

[7]     Plaintiff also states he included grievance receipts as exhibits to his Complaint, but it does not appear Plaintiff actually submitted those documents to the Court.

13

been and [are] being withheld and are not available" and Defendant Tillman "has been in fact destroying the Plaintiff's grievances and making sure that administrative remedies are not made available to the Plaintiff." Id.  Plaintiff's allegations on this point seem to be limited to the availability of administrative remedies at SMU, some time after he had already attempted to file grievances related to his other claims.

Plaintiff's allegations about the availability of administrative remedies at the SMU are vague and conclusory.  Plaintiff fails to explain what grievances were destroyed or how those grievances would have constituted exhaustion of the claims pending in this case.  The two grievance receipts Plaintiff provided are both dated after Plaintiff filed his Complaint and contain no information about the substance of the grievances.  At most, the two grievance receipts suggest Plaintiff might have filed other grievances that are not reflected on Plaintiff's grievance history.  Even so, the mere existence of other filed grievances does not demonstrate administrative remedies were unavailable to Plaintiff at the SMU or Plaintiff made efforts to pursue administrative remedies about the incidents underlying his claims in this case.  Ultimately, even accepting Plaintiff's allegations as true, Plaintiff fails to state that he attempted to file grievances at the SMU about the claims he brings in this case or such grievances were lost or destroyed.  The record, therefore, does not demonstrate administrative remedies were unavailable to Plaintiff at the SMU.

### 2. *Plaintiff's claims fail under Turner step two.*

Even if Plaintiff's conclusory and unsupported allegations were sufficient to constitute a factual dispute about exhaustion and the availability of administrative remedies under Turner step one, Defendants' Motion to Dismiss would be granted under Turner step two.  Under step two, the Court must "make specific findings in order to resolve the disputed factual issues related

to exhaustion." Turner, 541 F.3d at 1082. After resolving the factual disputes, the Court must then decide whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209).

Defendants have offered documentary evidence showing the grievances Plaintiff submitted were correctly denied for procedural reasons. Plaintiff claims the reasons for the denial were pretext, but he offers no support for that position. Plaintiff alternatively claims administrative remedies were unavailable because prison officials did not respond to his grievances, failed to provide him with grievance forms, or destroyed grievances he did submit. But Plaintiff offers no support whatsoever for these allegations and fails to explain how those alleged actions thwarted his efforts to exhaust administrate remedies. Therefore, after resolving any factual disputes that do exist, I conclude administrative remedies were available to Plaintiff during the relevant period and at the various institutions where Plaintiff was housed, but Plaintiff failed to properly exhaust those administrative remedies prior to filing suit.

In sum, Defendants have carried their burden to show Plaintiff did not exhaust his available administrative remedies. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss and **DISMISS** Plaintiff's claims against all Defendants.

## IV.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address this issue now. See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context

must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the

Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 4th day of March, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA